## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## CHARLESTON DIVISION

STEVEN WILLIAMS,

      Plaintiff,

v.                                                    Case No. 2:24-cv-00044

WILLIAM MARSHALL, DCR Commissioner, *et al.*,

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDATION

This civil action is assigned to the Honorable Frank W. Volk, Chief United States District Judge, and it is referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). Pending before the court are Defendants' Motion to Dismiss (ECF No. 22) and Plaintiff's Motion for Leave to Amend and Supplement Complaint (ECF No. 29).

### I.    BACKGROUND

Plaintiff is a West Virginia state prisoner currently incarcerated at the St. Marys Correctional Center, in St. Marys, West Virginia. On January 26, 2024, Plaintiff filed a Complaint under 42 U.S.C. § 1983 (ECF No. 2) asserting various constitutional challenges surrounding two prison disciplinary violations and his subsequent placement in administrative segregation at the Mount Olive Correctional Complex ("MOCC") in Mount Olive, West Virginia. Specifically, Plaintiff, who admits that he has a prior history of placement in administrative segregation at MOCC and other West Virginia Division of Corrections and Rehabilitation ("WVDCR") facilities, alleges that, in March of 2023, he

was placed in administrative segregation after being found guilty of two disciplinary violations for violating state law by possessing contraband, including drugs, in his cell, even though his cellmate took full responsibility for the items and denied that Plaintiff was even aware of them.

Plaintiff alleges that, in 2020, he filed civil litigation against MOCC correctional officers and administrators concerning a prior disciplinary violation and segregation placement.[1]  Plaintiff further summarily alleges that, after filing this civil action, he has been subject to "constant searches, urinalysis tests and scans[.]"  (ECF No. 2, ¶¶ 39-43).  As relevant here, Plaintiff alleges that, on January 23, 2023, after a drug test administered by Defendant Isaacs was negative, Isaacs told Plaintiff that he did not "deserve to be on the yard" and "we're going to get you."  (*Id.*, ¶¶ 44-46).  Plaintiff allegedly asked his unit manager (who is not a defendant herein) to be moved to another facility due to being "targeted by MOCC staff" and was told that he was at the top of the list to be moved.  (*Id.*, ¶¶ 46-47).

Plaintiff's cell was searched again on January 24, 2023 and he claims that the unidentified correctional officers laughed as they left his cell with his television hanging from the top shelf by the coaxial cable.  Plaintiff further claims that his cell was continually the only cell being searched.  (*Id.*, ¶¶ 50-51).  Plaintiff alleges that he submitted a grievance about this but fails to provide any details about the grievance or against whom it was filed.  (*Id.* at 5, ¶ 52).  At this time, Plaintiff was serving as a handicap assistant for another

---

[1] The undersigned takes judicial notice of the civil action in *Williams v. Dixon*, Case No. 2:20-cv-00688 (S.D.W. Va.), which was filed on October 19, 2020, and was dismissed when summary judgment was granted to the defendants therein on February 23, 2022.  (*See also* ECF No. 2, Ex. P).  Of the current defendants, only Defendant Wilson was named in the prior complaint.

inmate.  He further alleges that unidentified staff were encouraging the handicapped inmate to fire Plaintiff from that position.  (*Id.*, ¶ 55).

On January 25, 2023, Defendant Isaacs ordered another cell search and body scan of Plaintiff after he allegedly observed Plaintiff tampering with his cell door and placing something in his mouth.  (*Id.* at 5, ¶¶ 57-63, and 8, ¶ 106).  The cell search resulted in the discovery of a cell phone, hard drive, a plastic baggie containing an "unknown green leafy substance," and a cord and charger.  (*Id.* at 5, ¶ 69).  However, Plaintiff's body scans were "negative for foreign objects."  (*Id.*, ¶¶ 64-66, 69).  Defendant Meadows took control of the "green leafy substance" which, according to his incident report, tested positive for "synthetic cannabinoids."  (ECF No. 2, Ex. N).  Thereafter, Defendant Isaacs charged Plaintiff in a written Incident Report with a violation of Disciplinary Rule 1.18 (Violation of State Law) and, based upon the "green leafy substance, Defendant Meadows separately charged Plaintiff with a violation of Rule 1.19 (Use and Possession of Drugs and Intoxicants/Paraphernalia).  (*Id.*, ¶¶ 68-70 and Ex. M & N).

Plaintiff appeared at properly noticed disciplinary hearings before Defendant Wilson on February 1, 2023 and pled not guilty to both charges.  (*Id.*, ¶¶ 70-71).  He claims that no physical evidence of either charge was presented, and that Wilson ignored the testimony of Plaintiff's cellmate, who claimed ownership of the items found in the cell door and admitted that he placed the items there when Plaintiff was not in the cell.  (*Id.* at 6, ¶¶ 73-75).  Plaintiff further claims that Wilson denied his motion to dismiss the second charge, which Plaintiff viewed as "compound" or duplicative because it involved the "green leafy substance" that Isaacs has already charged him with but denied listing in his report.  (*Id.*, ¶¶ 78-80).

Plaintiff further alleges that Defendant Meadows testified that Plaintiff and his cellmate were both charged because neither of them "had immediately taken claim of the items when found" and, notwithstanding the cellmate's statement on the record that he was the owner of the property and Plaintiff's denial of any knowledge thereof, "it was still in the cell." (*Id.*, ¶¶ 81-85). Plaintiff also alleges that, without an opportunity for objection by Plaintiff, Wilson denied his motion to dismiss and allowed Meadows to correct or clarify details concerning the timeline in his report in violation of Policy Directive 325.00. (*Id.* at 6-7, ¶¶ 86-89). On February 2, 2023, Wilson found Plaintiff guilty of both charges and sentenced Plaintiff to 60 days of punitive segregation, loss of privileges, and loss of 360 days of good conduct time. (*Id.* at 7, ¶ 91) and Ex. E & I). These disciplinary findings were upheld on appeal by Defendants Frame and Marshall. (*Id.*, ¶¶ 93-96 and Ex. B, C, D, F, G, & H).

On March 16, 2023, as he neared completion of his punitive segregation period, Plaintiff appeared before the Administrative Segregation Committee (consisting of Defendants Carte, Savilla, and Myers), where Defendant Meadows allegedly testified to evidence that was not presented during Plaintiff's disciplinary hearings (specifically that he saw Plaintiff tampering with his cell door and placing something in his mouth), resulting in the committee's finding that he should be placed on administrative segregation. (*Id.* at 7, ¶¶ 97-98 and Ex. K & L). This decision was authorized by Defendant Ward and upheld on appeal by Defendant Marshall. (*Id.*, ¶¶ 98-99 and Ex. J & K).

Plaintiff's complaint claims that his disciplinary hearings were based upon false charges, were not conducted by an impartial hearing officer, and otherwise violated his due process rights and constituted double jeopardy in violation of the Fifth and

Fourteenth Amendments. (*Id*. at 14-18). Likewise, Plaintiff claims that his subsequent placement in administrative segregation was based on false evidence or other errors in the disciplinary proceedings, which were wrongfully upheld in violation of his Fourteenth Amendment due process rights. (*Id*.) The complaint also alleges that Defendants acted in retaliation for Plaintiff's prior filing of grievances and civil litigation against the defendants or their co-workers, in violation of the First Amendment. (*Id*. at 10-14, 18).

On May 6, 2024, Defendants collectively filed a Motion to Dismiss (ECF No. 22) and Memorandum of Law (ECF No. 23) asserting that Plaintiff's complaint fails to state a plausible claim for relief. Specifically, Defendants claim that Plaintiff can show no causal connection between his prior First Amendment activity and the decisions made by Defendants to sufficiently state a First Amendment retaliation claim. (ECF No. 23 at 4-6). They further assert that Plaintiff cannot establish any due process violations stemming from his prison disciplinary proceedings or that he has a valid liberty interest in avoiding administrative segregation to support a due process claim stemming from his placement therein in March of 2023. (*Id*. at 6-8). Finally, Defendants assert that the Fifth Amendment protection against double jeopardy has no application to prison disciplinary proceedings. (*Id*. at 9). Consequently, they request that Plaintiff's complaint be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

On May 22, 2024, Plaintiff filed a response in opposition to the motion to dismiss. (ECF No. 26). On May 24, 2024, Defendants filed a reply brief. (ECF No. 27). Then, nearly a month later, on June 17, 2024, Plaintiff filed a Motion for Leave to Amend and Supplement Complaint (ECF No. 29) in which he seeks to add claims against Defendants

Marshall, Frame, Meadows, Silva,[2] Ward, and McKinney grounded in a "failure to intervene" (otherwise known as "bystander liability"). Plaintiff summarily contends that these defendants were "fully aware of the due process violations being committed by the false charges alleged against the Plaintiff' and having "full knowledge of the retaliations being applied against Plaintiff for his following the PLRA required Administrative Grievance Procedure to rectify the ongoing constitutional violations" and acted with "deliberate indifference" thereto. (*Id.* at 4). On June 25, 2024, Defendants filed a response in opposition to Plaintiff's motion for leave to amend and supplement. (ECF No. 30). Plaintiff filed a reply brief on July 15, 2024. (ECF No. 31). Both motions are ripe for resolution and the parties' specific arguments will be discussed as necessary *infra*.

## II.    STANDARD OF REVIEW

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). However, to withstand a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead enough facts "to state a claim to relief that is plausible on its face." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

---

[2] It appears that Plaintiff is referring to the defendant named in his initial complaint as "Savilla." The undersigned is unsure of the correct spelling of this defendant's name.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'" *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). A complaint that alleges enough facts "to satisfy the elements of a cause of action created by [the relevant] statute" will survive a motion to dismiss. *Id*. at 648 (quoting *McCleary-Evans*, 780 F.3d at 585).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id*. Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id*. "[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted). This Court construes a *pro se* plaintiff's allegations "liberally," but the complaint must nonetheless "contain enough facts to state a claim for relief that is plausible on its face." *Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016).

### III.    DISCUSSION

A.    Plaintiff's First Amendment Retaliation Claims.

It is well-established that prison officials may not retaliate against prisoners for exercising their right to access the courts or for filing prison grievances. *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 544-45 (4th Cir. 2017); *Hudspeth v. Figgins*, 584 F.2d 1345, 1348 (4th Cir. 1978); *see also Hudson v. Palmer*, 468 U.S. 517, 523 (1984) (recognizing First Amendment right to petition for redress of grievances).  To state a valid First Amendment retaliation claim, a plaintiff "must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct." *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020) ("*Martin II*"); *see also Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005).

Thus, "the plaintiff must show that the defendant's retaliatory action was substantially motivated by the plaintiff's decision to exercise a constitutionally protected right, and that the action impaired the exercise of that right.  *See ACLU v. Wicomico Cty.*, 999 F.2d 780, 785 (4th Cir. 1993); *see also Dawes v. Walker*, 239 F.3d 489, 492 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002) (To survive summary dismissal, a plaintiff asserting First Amendment retaliation claims must advance non-conclusory allegations establishing each element of such claim); *accord Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003).  Where retaliatory conduct would "deter a person of ordinary firmness from the exercise of First Amendment rights,"

the claim may proceed.  *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (quoting *Constantine*, 411 F.3d at 500).

Plaintiff's complaint asserts that each of the Defendants violated his First Amendment rights by playing a role in placing him in disciplinary and administrative segregation in retaliation for filing various grievances and commencing civil litigation against Mount Olive officers and officials.  However, the complaint does not provide sufficient and specific facts concerning his prior First Amendment activity, including who was involved and when it occurred, and how each of the Defendants had actual knowledge thereof.

While Defendants acknowledge that the filing of civil litigation and inmate grievances is clearly protected First Amendment conduct in which Plaintiff had previously engaged, and that placement in administrative segregation "could deter a person of ordinary firmness  from filing future grievances or lawsuits," they assert that Plaintiff cannot plausibly plead the third required element of a causal relationship between his filing of grievances and civil actions and the Defendants' involvement in placing him in administrative segregation in March of 2023.  (ECF No. 23 at 5).  Specifically, Defendants contend that Plaintiff's complaint lacks "a chronology of events [including the filing of specific grievances] from which retaliation can be inferred," and which he contends motivated Defendants' alleged adverse actions against him.  (*Id.*)  Defendants' memorandum of law further notes that Plaintiff's civil suit was filed on February 26, 2021; two years before the allegedly retaliatory decisions concerning his placement in segregation in March of 2023.  Defendants suggest that this is too tenuous to create an inference of retaliation and, therefore, there is no causal connection.  (*Id.*)

9

In response, Plaintiff contends that he filed numerous grievances "over all of these issues" that would sufficiently constitute protected activity, and that the disciplinary and segregation processes take time to complete, such that the retaliation need not be immediate in time. (ECF No. 26 at 2-3).[3] Plaintiff further contends that he was placed in administrative segregation for conduct that does not normally warrant such placement, which he claims is further indicative of a retaliatory motive. (*Id.* at 3).

Defendants' reply brief emphasizes that Plaintiff's allegations that "there was a large conspiracy to retaliate against [him], so charges were brought, violations were found, and weeks to months later Plaintiff was placed in administrative segregation" are conclusory at best and insufficient to support a First Amendment retaliation claim. (ECF No. 27 at 2-3). The undersigned agrees.

As aptly noted by Defendants' motion documents, First Amendment retaliation claims in the prison context are generally "treated with skepticism because 'every act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds directly to prisoner misconduct.'" *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996). "Therefore, to state a prima facie case of retaliation, Plaintiff must present concrete facts corroborating the claim." *Wilson v. United States*, 332 F.R.D. 505, 524 (S.D.W. Va. 2019).

For the purposes of Defendants' motion to dismiss, the undersigned finds that Plaintiff has plausibly alleged that he engaged in First Amendment protected conduct and that his disciplinary actions and placement in administrative segregation is conduct that could chill a person of ordinary firmness from pursuing such conduct in the future. *See*

---

[3] Plaintiff states that he intends to request copies of such grievances during the discovery process. (ECF No. 26 at 2).

*Martin v. Duffy*, 858 F.3d 239, 249-50 (4th Cir. 2017) ("*Martin I*").  However, Plaintiff's complaint makes nothing more than sweeping, conclusory allegations that each of the defendants had knowledge of his First Amendment conduct and took adverse action against him because of that conduct.  Only Defendant Wilson was a defendant in Plaintiff's 2020 lawsuit (filed more than two years before the incidents alleged in the complaint) and allegations about each defendants' knowledge of that lawsuit or specific grievances are conspicuously absent.  Moreover, despite Plaintiff's contention that the defendants' actions were taken because of his prior litigation, the complaint fails to allege any specific facts that would indicate that any defendant was motivated by Plaintiff's First Amendment activity.  At best, Plaintiff alleges that Defendant Isaacs stated, "we're going to get you" and "you don't deserve to be on the yard."  Yet he fails to attribute any actual knowledge by Isaacs of his First Amendment activity.

With respect to the causation element, a plaintiff must plausibly allege knowledge by the defendant of the plaintiff's protected activity and must establish that the retaliation took place within some "temporal proximity" of that activity.  *Constantine*, 411 F.3d at 501; *see also Banner v. Anderson*, No. 6:21-cv-03738-JD-KFM, 2022 WL 2068866, at *6 (D.S.C. Feb. 15, 2022), *report and recommendation adopted*, 2022 WL 1537320 (D.S.C. May 16, 2022) (citing *Germain v. Bishop*, TDC-15-cv-1421, 2018 WL 1453336, at *14 (D. Md. Mar. 23, 2018)).  Thus, "a prisoner must present more than conclusory accusations of retaliation, and must provide facts that show the exercise of his constitutional right was a substantial factor motivating the retaliation."  *Id.* (citing *Adams v. Rice*, 40 F.3d 72, 74-75 (4th Cir. 1994); *Cochran, supra,* 73 F.3d at 1318).  Moreover, mere "temporal proximity" between the inmate's protected activity and the official's allegedly retaliatory

act "is simply too slender a reed on which to rest" a First Amendment retaliation claim under § 1983. *Wagner v. Wheeler,* 13 F.3d 86, 91 (4th Cir. 1993); *see also Dougherty v. Virginia*, No. 7:12-cv-00549, 2013 WL 750140, at *6 (W.D. Va. Feb. 27, 2013). "Because prisoner retaliation claims are 'easily fabricated . . . and . . . pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration,' courts must insist that such claims are bound up in facts, not in the gossamer strands of speculation and surmise." *Hannon v. Beard*, 645 F.3d 45, 48 (1st Cir. 2011) (*quoting Bennett v. Goord,* 343 F.3d 133, 137 (2d Cir. 2003) (internal quotation marks omitted).

"Retaliation is not established simply by showing adverse activity by [a] Defendant after protected speech; Plaintiff must show a nexus between the two." *Williams v. Fox*, No. 1:16-cv-00143, 2017 WL 916432, * 7 (D. Idaho Mar. 7, 2017). Thus, Plaintiff must allege more than his own speculative belief that he is the victim of retaliation. For example, a conclusory allegation that a correctional officer "wrote me up for revenge" is insufficient to state a plausible retaliation claim and fails to allege a plausible nexus between specific protected activity and the alleged conduct of the defendant. *See Bouknight v. Shaw,* No. 08 Civ. 5187, 2009 WL 969932, at *6 (S.D.N.Y. Apr. 6, 2009). Therefore, "[c]ourts must be wary of allowing inmates to claim retaliation every time some action is taken against them, particularly in matters involving institutional security." *Crenshaw v. Hartman*, 681 F.Supp.2d 412 (W.D.N.Y. 2010).

Plaintiff's complaint amounts to nothing more than conclusory accusations of retaliation that are insufficient to properly assert plausible retaliation claims under the First Amendment. Consequently, the undersigned proposes that the presiding District

Judge **FIND** that the complaint fails to state a plausible First Amendment claim against any of the defendants herein.

      B.      Plaintiff's Fourteenth Amendment Due Process Claims.

Defendants' motion documents further assert that Plaintiff has failed to sufficiently plead and cannot establish the essential elements of a Fourteenth Amendment due process claim grounded in his placement in punitive and administrative segregation. Although Defendants' motion focuses on the failure of Plaintiff to establish a valid liberty interest concerning his placement in administrative segregation, the undersigned will first address Plaintiff's allegations concerning due process violations surrounding his prison disciplinary proceedings. With respect to the disciplinary proceedings, Plaintiff's loss of 360 days of good conduct time does implicate a valid liberty interest to which limited due process protections apply.

To establish a Due Process violation, a prisoner must demonstrate that (1) he "had a protectable liberty interest," and (2) the defendant "failed to afford minimally adequate process to protect that liberty interest." *Thorpe v. Clarke*, 37 F.4th 926, 941 (4th Cir. 2022) (citing *Burnette v. Fahey*, 687 F.3d 171, 180, 181 (4th Cir. 2012)). The Supreme Court has clearly established the procedural requirements to satisfy due process with respect to prison disciplinary proceedings which, because they are not part of a criminal prosecution, do not entitle an inmate to the "full panoply of rights due a [criminal] defendant." *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Instead, an inmate must only receive: "(1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the

factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent, Mass. Corr. Inst., Walpole v. Hill*, 472 U.S. 445, 454 (1985) (citing *Wolff*, 418 U.S. at 563-67). Additionally, the proceedings must be decided by an impartial factfinder. A prison hearing officer is considered impartial unless he or she has "a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role," in the circumstances underlying the charge. *Meyers v. Alldredge*, 492 F.2d 296, 306 (3d Cir. 1974); *Mitchell v. Maynard*, 80 F.3d 1433, 1446 (10th Cir. 1996); *Butts v. Clarke*, No. 2:12-cv-210, 2013 WL 6408357, at *9 (E.D. Va. Dec. 6, 2013) (citing *Brown v. Angelone*, 938 F. Supp. 340, 345 (W.D. Va. 1996) (finding that without more, an institutional hearing officer's determination of credibility or lack thereof, is not evidence of bias). "[T]he degree of impartiality required of prison hearing officials does not rise to the level of that required of judges generally[.]" *Francis v. Coughlin*, 891 F.2d 43, 46 (2d Cir. 1989) (citing *Cleavinger v. Saxner*, 474 U.S. 193, 203-04 (1985)); *see also Ali v. Buffaloe*, No. 1:22-cv-259, 2023 WL 2602003, at *8 (M.D.N.C. Feb. 2, 2023), *report and recommendation adopted sub nom. Ali v. Ishee*, No. 2023 WL 2600090 (M.D.N.C. Mar. 22, 2023).

Moreover, *Wolff* "did not require either judicial review or a specified quantum of evidence to support the factfinder's decision." *Hill*, 472 U.S. at 454. Rather, the Supreme Court held that due process is satisfied if "the findings of the prison disciplinary board are supported by some evidence in the record." *Id.* (emphasis added); *see also Brown*, 938 F. Supp. at 345 ("so long as the decision of the hearing officer (and the decisions of the officers reviewing the conviction on appeal) is based on some evidence in the record, the federal court will not inquire further into the validity of that decision."). In other words,

"[t]he fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators [in disciplinary proceedings] that have some basis in fact." *Id.* at 456. In determining whether this standard is satisfied, a court is not required to examine the entire record, independently assess the credibility of witnesses, or weigh the evidence. *Id.* at 455. The relevant inquiry is whether there is any evidence in the record that could support the conclusion reached by the arbiter. *Id.* As noted previously by the presiding District Judge herein, "[t]his is an exceedingly lenient standard, requiring only 'a modicum of evidence' in order 'to prevent arbitrary deprivations without threatening institutional interests or imposing undue administrative burdens.'" *Reynolds v. Young*, No. 5:20-cv-00753, 2023 WL 1777378, at *3 (S.D.W. Va. Feb. 6, 2023) (quoting *Tyler v. Hooks*, 945 F.3d 159, 170 (4th Cir. 2019) (other citations omitted)).

Here, Plaintiff contends that his prison disciplinary charges were not supported by the evidence and that Defendant Wilson, who had previously been sued by Plaintiff, disregarded prison policies and ignored evidence of his innocence. Consequently, Plaintiff contend that Wilson did not act as an impartial factfinder in violation of his due process rights. (ECF No. 2 at 8, ¶ 105 and at 17, ¶ 151).

Plaintiff is unable to establish that he did not receive the minimal due process afforded to prison disciplinary proceedings. He received advance notice of the charges against him; he had an opportunity to be heard and to present any evidence in his defense; and he received a written explanation of the evidence and reasons for his guilty findings. Moreover, although Plaintiff and his cellmate denied his ownership or awareness of the items hidden in the cell door, the hearing officer's decision was supported by some

evidence as set forth in the officers' incident reports and testimony at the hearing. As noted above, this is an extremely lenient standard and it is not the place of this Court to question the credibility determinations made by the hearing officer. Nor has Plaintiff sufficiently demonstrated that the hearing officer was not impartial. As addressed in the authority above, Wilson was not directly involved in the underlying investigation or charging of Plaintiff with these violations and Plaintiff's conclusory assertion that Wilson is biased because Plaintiff had previously and unsuccessfully sued him, without more, is insufficient to demonstrate that he was not impartial in these disciplinary proceedings.

Nonetheless, even if Plaintiff could establish the essential elements of a due process claim concerning his prison disciplinary proceedings, his claim for damages thereon is not cognizable because he has failed to establish that the decision has been overturned or called into doubt by a court or other tribunal. In *Heck v. Humphrey*, 512 U.S.477 (1994) the Supreme Court held that, "[i]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254." Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487.

The Supreme Court extended the *Heck* rationale to prison disciplinary proceedings in *Edwards v. Balisok*, 520 U.S. 641 (1997), when it held that, in the context of prison disciplinary hearings that result in the loss of good-time credits, challenges to prison hearing procedures which necessarily imply the invalidity of the judgment must be pursued in *habeas corpus*, not in a Section 1983 action. Accordingly, the undersigned proposes that the presiding District Judge find that, to the extent that Plaintiff alleges that he was denied due process in connection with his prison disciplinary hearing, his allegations imply the invalidity of the disciplinary hearings and its review and appeal process, and because those proceedings have not been invalidated, his due process claims are not cognizable herein.

Turning to Plaintiff's due process claims concerning his placement in administrative segregation, Plaintiff must separately establish that he has a valid liberty interest in avoiding such placement. In the prison context, the Court determines whether a protected interest is implicated and, thus, whether the Due Process Clause attaches, both by examining the expectations created by state regulations and the nature of the sanctions imposed. *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). Due process concerns are not implicated unless the imposed sanction presents an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484; *Prieto v. Clarke*, 780 F.3d 245, 249 (4th Cir. 2015). The Court's inquiry in this regard is a "fact specific comparative exercise" and the "baseline for atypicality" here is the prison's general population, since Plaintiff was transferred from general population to segregation. *Id.* at 253-54; *see also Incumaa v. Stirling*, 791 F.3d 517, 527 (4th Cir. 2015).

17

Defendants herein assert that Plaintiff cannot establish that his confinement in segregation constitutes an atypical and significant hardship. Their memorandum of law asserts:

> As a general matter, administrative segregation programs and housing do not impose an atypical and significant hardship on an inmate in relation to the ordinary incidents of prison life contemplated within a sentence. *See Beverati v. Smith*, 120 F.3d 500, 503-04 (4th Cir. 1997); *Sandin*, 515 U.S. at 486. "In order to prevail on either a procedural or substantive due process claim, inmates must first demonstrate that they were deprived of life, liberty, or property" by governmental action. *Beverati*, 120 F.3d at 502. In *Beverati*, the Court found that inmates in administrative segregation who claimed to be surrounded by vermin and human filth, denied air conditioning, served cold food, denied outdoor recreation, and given no educational or religious services had failed to show a substantial adverse impact as stated in *Sandin*. The Court held that neither the fact that an inmate was placed in administrative segregation, nor the general conditions therein, resulted in confinement that is atypical or posed a significant hardship on the inmate vis a vis ordinary prison life, so as to give rise to a liberty interest protected by the Due Process Clause. *Beverati*, 120 F.3d at 502-04.

(ECF No. 23 at 6-7); *but see Wilkinson v. Austin*, 545 U.S. 209 (2005) (finding that conditions at Ohio Supermax facility where almost all human contact was prohibited and placement was indefinite and disqualified inmates from parole consideration, taken together, imposed an atypical and significant hardship within the prison context).

Defendants further rely on the Fourth Circuit's decision in *Earle v. Shreves*, 990 F.3d 774, 780 (4th Cir. 2021), emphasizing the discretion of prison officials to determine prison housing designations. There, the Court held:

> Whether to place an inmate in more restrictive detention involves real-time and often difficult judgment calls about disciplining inmates, maintaining order, and promoting prison officials' safety and security. . . . prison officials must have discretion to determine detention policies, to assess the endless variety of circumstances in which those policies may be implicated, and to decide when administrative detention is deserved and for how long. Given the ease with which an inmate could manufacture a claim of retaliatory

> detention, allowing a [civil] action for such claims could lead to an intolerable level of judicial intrusion into an issue best left to correctional experts. It is a rule grounded in necessity and common sense, as well as authority, that the maintenance of discipline in a prison is an executive function with which the judicial branch ordinarily will not interfere.

*Id.* at 780.

In his response, Plaintiff asserts, for the first time, that he was "deprived of liberty and property" while housed in segregation for two years and further addresses the restrictive nature of such confinement. (ECF No. 26 at 5-6). He specifically lists personal property to which he had no or limited access during that time – claiming that he was "forced to send home or destroy much of this property due to being in Administrative Segregation." (*Id.* at 6). He further contends that:

> He was denied his liberty for two (2) years by being restricted solely to his cell for twenty-three (23) to twenty-four (24) hours per day. He was denied the ability to exercise, to walk around, to go outside, to contact his family and loved ones except in rare instances, to visit with his family and loved ones, and any and all other "freedoms" one has while on Mainline Population.

(*Id.*) However, his response further acknowledges that, these conditions, which were not alleged at all in his complaint, "in and of themselves are not a liberty interest when an individual is placed on Administrative Segregation due to legitimate behavioral issues[.]" (*Id.*) Nonetheless, he contends that, when Administrative Segregation is used in a retaliatory manner, it does create a liberty interest. (*Id.*)

Plaintiff's response further asserts that, because the WVDCR and MOCC chose to implement a process and procedures for placement in administrative segregation, prison officials have an obligation to follow those procedures and, thus, have established a liberty interest therein. His response states, "Defendants have an obligation to only place

inmates in Administrative Segregation only when it is absolutely a necessity in order to protect the safety and security of the prison, its employees, and its population." (*Id.* at 3). Plaintiff then disputes that his own personal history of disciplinary violations and conduct (and particularly his instant offense) constitutes a "history of violence" that necessitates placement in administrative segregation. (*Id.* at 3-7).

As noted by Defendants' reply, however, the reason a prisoner is placed in administrative segregation "has no bearing on whether a liberty interest is implicated" and "Plaintiff has not pleaded any allegations that placement in administrative segregation was a significant hardship on him compared to ordinary incidents of prison life." (ECF No. 27 at 4). Moreover, Plaintiff's conclusory assertions that Defendants violated prison policies do not, standing alone, give rise to a constitutional violation. (*Id.*)

To date, the undersigned is unaware of any precedent finding that placement in administrative segregation at MOCC constitutes an atypical and significant hardship as compared to the ordinary instances of prison life to establish a protected liberty interest. Moreover, even presuming that the condition of confinement in segregation at MOCC could support a liberty interest, neither Supreme Court nor Fourth Circuit precedent has clearly established the exact process prisoners must receive while in long-term administrative segregation. *See Halcomb v. Ravenell*, 992 F.3d 316, 322 (4th Cir. 2021) (finding that our case law does not clearly mandate "prior" notice of segregation hearings). In its most recent published opinion on the issue, the Fourth Circuit held:

> [I]n determining whether the conditions of confinement to which the prisoner was transferred were "harsh and atypical," we consider three factors: "(1) the magnitude of confinement restriction; (2) whether the administrative segregation is for an indefinite period; and (3) whether assignment to administrative segregation had any collateral consequences

on the inmate's sentence." *Incumaa*, 791 F.3d at 530.  Any one of these factors "standing alone might not be sufficient to create a liberty interest," or alternatively, to show a lack of one.  *Wilkinson*, 545 U.S. at 224, 125 S. Ct. 2384.  Instead, all factors should be considered "together" when making the determination. *Id.*; *see also Smith* [*v. Collins*], 964 F.3d [266] at 269 (4th Cir. 2020)].

*Cartagena v. Lovell*, 103 F.4th 171, 183 (4th Cir. 2024).  However, the *Cartegena* Court further found that, even if the conditions to which the plaintiff/appellant therein was subjected were found to be "harsh and atypical," he did not establish a cognizable liberty interest because his confinement in segregation was not indefinite and the conditions were relaxed throughout that time, depending on his own conduct, and there were no collateral consequences not within his control that definitively affected the length of his sentence. *Id.* at 183-84. Thus, the Court found that there was no constitutionally required process related to his placement in administrative segregation and affirmed dismissal of his due process claim.  *Id.* at 184.

Plaintiff's complaint is silent as to any conditions that could support the atypical and significant hardship element and his attempt to add such support in his response brief fails to cure that deficiency, as the Court should not consider facts not contained in the complaint itself.  *See, e.g., Clement v. Spartanburg Steel Prod., Inc.*, No. 7:22-cv-173-MGL-KFM, 2022 WL 19266406, at *4 (D.S.C. Dec. 2, 2022), *report and recommendation adopted*, No. 7:22-cv-173-MGL-KFM, 2023 WL 2655183 (D.S.C. Mar. 27, 2023); *Adams v. 3D Sys., Inc.*, No. 0:19-cv-663-JMC, 2020 WL 1283712, at *2 (D.S.C. Mar. 18, 2020) ("[I]n ruling on a motion to dismiss under Rule 12(b)(6), the court may only look to the allegations of the complaint . . . [and] the Court will not consider any additional facts that were not alleged in the complaint.") (citations and internal quotation marks omitted);

21

*Carroll v. United Parcel Serv., Inc.*, No. 1:17-cv-3108-DCC-JDA, 2018 WL 4126450, at *4 (D.S.C. Mar. 15, 2018) ("On a motion to dismiss, the Court will consider only the allegations included in Plaintiff's Complaint.") (internal citations omitted), *report and recommendation adopted in relevant part by* 2018 WL 4111017 (D.S.C. Aug. 29, 2018); *El Hadidi v. Intracoastal Land Sales, Inc.*, No. 4:12-cv-00535-RBH, 2013 WL 625575, at *3 n.3 (D.S.C. Feb. 20, 2013) ("The Court, however, in ruling on a motion to dismiss filed under Rule 12(b)(6), may only look to the allegations of the complaint. Accordingly, the Court will not consider any additional facts that were not alleged in the complaint."). Nonetheless, even if the Court were to liberally construe Plaintiff's complaint to include the facts alleged for the first time in his response, like the plaintiff/appellant in *Cartegena*, Plaintiff has not established a protected liberty interest based upon the asserted conditions because he has not alleged, nor can he demonstrate, that his placement in administrative segregation is indefinite or has collateral consequences on his sentence that are outside of his own control.

Based upon the allegations contained in Plaintiff's complaint, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff has failed to establish a protected liberty interest grounded in his placement in administrative segregation in order to give rise to a Fourteenth Amendment due process claim concerning such placement. Therefore, the complaint fails to state a plausible Fourteenth Amendment claim against any of the Defendants concerning Plaintiff's placement in either punitive or administrative segregation.

C.    Plaintiff's Fifth Amendment Double Jeopardy Claim.

Finally, Defendants' motion documents contend that Plaintiff's complaint fails to

22

state a plausible Fifth Amendment claim grounded in a double jeopardy violation stemming from allegedly being punished twice for the same conduct – possessing a "green leafy substance." The Double Jeopardy Clause of the Fifth Amendment states that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. Defendants' memorandum of law, however, asserts that:

> In interpreting this Clause, the United States Supreme Court has held that the application of the double jeopardy clause is limited to proceedings which are essentially criminal, and, therefore, does not apply to prison disciplinary hearings. *Jackson* [*v. Barksdale*], 2016 U.S. Dist. LEXIS 134087 at *2 [(W.D. Va. Sept. 29, 2016)] (citing *Breed v. Jones*, 421 U.S. 519, 528 (1975); *Lucero v. Gunter*, 17 F.3d 1347, 1350 (10th Cir. 1994); *Patterson v. United States*, 183 F.2d 327, 327-28 (4th Cir. 1950)). Therefore, because Plaintiff's Fifth Amendment claims do not apply to prison disciplinary proceedings, Plaintiff's Fifth Amendment claim fails as a matter of law.

(ECF No. 23 at 8).

Plaintiff, on the other hand, asserts that Defendants' counsel has misinterpreted *Jackson v. Barksdale* which, he claims, involved an inmate who received two separate punishments for one sanction (a loss of phone privileges was essentially upgraded to placement in segregation on further review). Nonetheless, while Plaintiff acknowledges that the double jeopardy clause does not apply to prison disciplinary proceedings, he contends that, in his circumstances, double jeopardy principles should bar his second punishment for the same conduct. (ECF No. 26 at 7-8). His response states:

> In this case, Plaintiff was written up two times for the exact same incident. He had two separate hearings, and was found guilty two separate times. Ergo, this is Double Jeopardy. And while Double Jeopardy may not typically apply to Prison Disciplinary Proceedings, it does in this case because the facility Rules on the Ground and Policy of WVDCR – a State agency – must be enforced.

(*Id.* at 8). Defendants' reply reiterates their prior arguments. (ECF No. 27 at 5-6).

It is clearly established that the Double Jeopardy Clause of the Fifth Amendment does not apply to prison disciplinary proceedings, which are not criminal in nature.  *See, e.g., United States v. Green*, 508 F. App'x 206, 207 (4th Cir. 2013) ("The Double Jeopardy Clause was not intended to inhibit prison discipline[.]") (quoting *United States v. Simpson*, 546 F.3d 394, 398 (6th Cir. 2008)); *Mayweather v. Guice*, No. 1:17-cv-100-FDW, 2018 WL 3868806, at *8 (W.D.N.C. Aug. 14, 2018) ("Plaintiff's reliance on the Double Jeopardy Clause is misplaced because prison disciplinary proceedings are not part of a criminal prosecution, and therefore, the Double Jeopardy Clause does not apply."); *Martin v. West*, No. 8:17-cv-2754-MGL-JDA, 2017 WL 6888825, at *2 (D.S.C. Dec. 15, 2017) (citing *Patterson v. United States*, 183 F.2d 327, 327 (4th Cir. 1950) (disciplinary sanction does not constitute a prosecution for double jeopardy purposes); *Anderson v. Padula*, 05-cv-3029-PDM, 2006 WL 1075003 at *4 (D.S.C. Apr. 19, 2006) (concluding the double jeopardy clause was not implicated when the plaintiff was sanctioned twice for one prison disciplinary charge); *Terron v. Kupec*, No. AMD-01-cv-2155, 2001 WL 34698403, at *1 (D. Md. July 30, 2001), *aff'd*, 48 F. App'x 79 (4th Cir. 2002) ("Double jeopardy does not apply to prison disciplinary proceedings.").  In fact, the presiding District Judge herein has already made a similar finding and dismissed a double jeopardy challenge to prison discipline.  *See Reynolds v. Young*, No. 5:20-cv-00753, 2023 WL 1777378, at *2 (S.D.W. Va. Feb. 6, 2023) ("the Double Jeopardy Clause does not apply to repeated disciplinary proceedings.")

Accordingly, Plaintiff is unable to sufficiently establish a plausible Fifth Amendment claim based upon his receipt of two separate prison disciplinary charges stemming from his possession of a "green leafy substance" that was determined to be both

contraband in violation of state law and to constitute use or possession of drugs or intoxicants/paraphernalia. Therefore, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's complaint fails to state a plausible Fifth Amendment claim against any of the Defendants herein.

      D.      Plaintiff's Motion for Leave to Amend/Supplement Complaint is futile.

On June 17, 2024, Plaintiff filed a Motion for Leave to Amend and Supplement his Complaint (ECF No. 29). Within that document, Plaintiff incorporates by reference all the allegations contained in his initial complaint and appears to seek leave to amend his complaint to add claims of bystander liability against Defendants Marshall, Frame, Meadows, Savilla, Ward, and McKinney. As noted above, Plaintiff's proposed amendment summarily alleges that these Defendants "were fully aware of the due process violations being committed by the false charges alleged against the Plaintiff and had full knowledge of the retaliations being applied against the Plaintiff . . . ." (*Id.* at 4). However, Plaintiff's conclusory allegations in his proposed amendments suffer from the same deficiencies as his initial complaint and fail to state any plausible claim for relief.

Federal Rule of Civil Procedure 15 governs the amendment of pleadings. Rule 15(a)(1) permits a plaintiff one opportunity, as a matter of course, to amend his or her complaint, subject to certain time limitations. Fed. R. Civ. P. 15(a)(1). Rule 15(a)(2), on the other hand, provides that "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The United States Supreme Court indicated that leave to amend a pleading should be denied only (1) when the amendment would be prejudicial to the opposing party, (2) there has been bad faith on

the part of the moving party, or (3) the amendment would be futile.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).

An amendment is futile under Rule 15 if it would fail to survive a motion to dismiss for failure to state a claim.  *See U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008).  Thus, it would be futile for the court to grant leave to amend a complaint when the proposed amendment is "clearly insufficient or frivolous on its face."  *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986).

The parties first dispute whether Plaintiff's amendment may be made as a matter of course, on the basis that Defendants' pending Motion to Dismiss is not a "responsive pleading," or whether he requires leave of court.  Because more than 21 days had passed from the filing of the initial complaint and from when Defendants had filed their motion to dismiss before Plaintiff filed his motion to amend, the undersigned believes that leave of court for the amendment is required.

Moreover, while leave to amend under Rule 15 of the Federal Rules of Civil Procedure should be freely given, because the undersigned has found that Plaintiff's complaint fails to state any plausible claim for relief against the Defendants, the undersigned further proposes that the presiding District Judge **FIND** that Plaintiff's proposed amendment to include a bystander theory of liability against certain Defendants would be futile.  Nothing in Plaintiff's proposed amendment(s) would alter the analysis previously provided herein and the new allegations would also be subject to dismissal under Rule 12(b)(6).  *See, e.g., Ervin v. Corizon Health, No.* ELH-21-cv-2386, 2022 WL 4777577, at *8 (D. Md. Oct. 3, 2022) (denying motion to amend complaint based upon futility) (quoting *Katyle v. Penn Nat. Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011) ("[A]

district court may deny leave if amending the complaint would be futile—that is, if the proposed amended complaint fails to satisfy the requirements of the federal rules.")); *Punzo v. Jividen*, No. 2:20-cv-00744, 2022 WL 1260099, at *9 (S.D.W. Va. Feb. 11, 2022), *report and recommendation adopted*, No. 2:20-CV-00744, 2022 WL 729423 (S.D.W. Va. Mar. 10, 2022) ("Plaintiff's complaint and proposed amendments fail to sufficiently allege any plausible violation of his Eighth or Fourteenth Amendment rights and, thus, any such proposed amendments would be futile."); *Reynolds v. Fed. Bureau of Prisons*, No. 5:20-cv-00753, 2022 WL 19039523, at *5 (S.D.W. Va. Apr. 12, 2022), *report and recommendation adopted sub nom. Reynolds v. Young*, 2023 WL 1777378 (S.D.W. Va. Feb. 6, 2023) *(*denying motion to amend complaint where there was no merit to proposed amended claim).

      E.    Plaintiff's claims for declaratory and injunctive relief are moot.

Plaintiff's complaint includes requests for injunctive relief in the form of his release from administrative segregation at MOCC and his transfer to a different facility. (ECF No. 2 at 18). He also requests that the Court declare that the actions of the various defendants violated his constitutional rights as alleged in his complaint. (*Id.*) However, sometime after the complaint was filed, Plaintiff was released from administrative segregation at MOCC, and he has since been transferred to other correctional facilities. In fact, he is currently incarcerated at the St. Marys Correctional Center, which is located within the jurisdiction of the United States District Court for the Northern District of West Virginia.

The power of the federal courts to adjudicate claims turns on the existence of a case or controversy. U.S. Const., art. III, § 2; *Daimler-Chrysler Corp. v. Cuno*, 547 U.S. 332,

352 (2006).  "When a case or controversy ceases to exist because the issue is no longer live or a party 'lack[s] a legally cognizable interest in the outcome[,]' preventing the court from granting effective relief, the claim becomes moot, and the court lacks the constitutional authority to adjudicate the issue."  *Taylor v. Riverside Regional Jail Authority*, 2011 WL 6024499 *4 (E.D. Va., Dec. 2, 2011) (citing *Powell v. McCormack*, 395 U.S. 486, 496 (1969) and *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)).

As noted in *Taylor*, well-established Fourth Circuit precedent has recognized that "the transfer or release of an inmate from the facility where he suffered the challenged conditions 'moots his claims for injunctive and declaratory relief' pertaining to his imprisonment." 2011 WL 6024499 at *4; *see also Rendellman v. Rouse*, 569 F.3d 182, 186 (4th Cir. 2009) ("as a general rule, a prisoner's transfer or release from a particular prison moots his claims for injunctive and declaratory relief with respect to his incarceration there.").  For these reasons, the undersigned proposes that the presiding District Judge **FIND** that, notwithstanding any other findings proposed herein, any claims for declaratory and injunctive relief made by Plaintiff herein must be denied and dismissed as moot.

## IV.    RECOMMENDATIONS

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Defendants' Motion to Dismiss (ECF No. 22), **DENY** Plaintiff's Motion for Leave to Amend and Supplement Complaint (ECF No. 29), and **DISMISS** this civil action from the docket of the Court.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Frank W. Volk, Chief

United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to Chief Judge Volk and the opposing parties.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to Plaintiff, and to transmit a copy to counsel of record.

February 20, 2025

Dwane L. Tinsley
United States Magistrate Judge